## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Brainlink International, Inc. | ) | Court No.: 1:20-cv-01279-RPK-RML |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| HT Media, Ltd. | ) | |
| Hindustan Media Venture Ltd. | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |

## MOTION TO STAY

Brainlink International, Inc, ("Plaintiff") by its attorney, Anthony M. Verna III, Esq., hereby files the following Motion to Stay.

Defendants HT Media, Ltd. and Hindustan Media Venture Ltd. filed a case in the High Court of Delhi at New Delhi for the reasons as more particularly set out in the plaint (Indian term for "complaint") and an interim application (Indian term for "motion") filed by the Defendants.

Defendants mentioned this case filed in the Eastern District of New York in its filings before the High Court of Delhi at New Delhi.

On April 28, 2020, the High Court of Delhi at New Delhi *inter alia* ordered Plaintiff Brainlink from proceeding further with the suit titled Brainlink International, Inc. v HT Media and Another (Civil Action No.1 20-cv-01279) before the United States District Court for the Eastern District of New York or to institute/file any suit, applications, proceedings in any Court of Law or

1

Authority, in relation to the impugned Domain name or in relation to any issue which forms the subject matter of the present Suit. See **EXHIBIT A**.

The Plaintiff has filed an application for vacating/varying/modification of the order dated April 28, 2020 passed by the High Court of Delhi at New Delhi and the said application is pending / yet to be heard. See **EXHIBIT B** for the order dated June 2, 2020 from the High Court of Delhi at New Delhi, India.

The Certificate of Default was filed by mistake, not understanding the order of the foreign, international court and for the reasons as more particularly set out in the affidavit in reply filed by the Plaintiff to Defendants' application bearing No.4132 OF 2020 IN C.S. (COMM) NO.119 OF 2020. See **EXHIBIT C** for the order dated July 9, 2020 from the High Court of Delhi at New Delhi, India.

In view of the order(s) of the High Court of Delhi at New Delhi, the Plaintiff asks this motion to 1) rescind the Certificate of Default and 2) to stay all dates in this case until the order dated April 28, 2020 passed by the High Court of Delhi at New Delhi is vacated / modified and/or the case in the High Court of Delhi at New Delhi is decided. If the Court is unable to grant that request, Plaintiff requests that the Court grant sufficient time so as to enable the Plaintiff to file necessary applications before the High Court of Delhi at New Delhi and take necessary directions as to any further filings before this Court.

The Plaintiff is able to produce all the documents and/or pleadings as filed in the High Court of

Delhi at New Delhi if and when required and directed by this Court.


Respectfully Submitted,


Dated:  August 5, 2020

_____
Anthony M. Verna III, Esq.
Verna Law, P.C.
80 Theodore Fremd Ave.
Rye, NY 10580
Attorney for Plaintiff
Brainlink International, Inc.

EXHIBIT A

$~O-2

\*      **IN  THE  HIGH  COURT  OF  DELHI  AT  NEW  DELHI**

+      CS (COMM) 119/2020 and IAs 3767-3771/2020

HT MEDIA LIMITED & ANR.                                      ..... Plaintiffs
                              Through:   Mr.  Sai  Krishna  Rajagopal,  Mr.
                              Vivek   Ayyagari,   Mr.   Siddharth
                              Chopra,  Ms.  Sneha  Jain  and  Ms.
                              Asavari Jain, Advocates
                   versus

BRAINLINK INTERNATIONAL, INC. & ANR.      ..... Defendants
                              Through:   None
**CORAM:**
**HON'BLE MS. JUSTICE JYOTI SINGH**

**O R D E R**
%                        **28.04.2020**

[Hearing has been conducted through video conferencing]

**I.A. No.3770/2020  (exemption)**

Exemption allowed subject to all just exceptions.

Application stands disposed of.

**I.A. No.3769/2020  (exemption from filing court fee and affidavits)**

In view of the reasons stated in the application, the same is disposed
of with a direction to the applicants to file duly signed and affirmed
affidavits and pay the requisite court fee within a period of one week of
lifting of the lockdown.

Application stands disposed of.

**I.A. No.3771/2020  (for filing additional documents)**

This is an application for filing of additional documents. The
additional documents may be filed by the plaintiffs, strictly in accordance

with the provisions of the Commercial Courts Act, 2015. The application is disposed of.

**CS (COMM) 119/2020**

1.      Let Plaint be registered as a Suit.

2.      Issue Summons to the Defendants, upon filing of process fee, through all modes including email.

3.      Summons to the Defendants shall indicate that Written Statement to the Plaint shall be positively filed within 30 days from the date of receipt of the Summons. Along with the Written Statement, Defendants shall also file an affidavit of Admission/Denial of Documents of the Plaintiffs, without which the Written Statement shall not be taken on record.

4.      Plaintiffs shall file Replication within 15 days of receipt of the Written Statement, along with an affidavit of Admission/Denial of documents of the Defendants without which Replication shall not be taken on record. Parties are permitted to carry out inspection of any document as per the timeline and procedure prescribed under the Delhi High Court (Original Side) Rules, 2018.

5.      List the matter before the Joint Registrar for marking of Exhibits on 13.05.2020.

6.      List before Court on 29.05.2020.

7.      The entire paper book as well as a copy of the order passed today would be served on the Defendants along with the summons.

**I.A. No. 3767/2020   (under Order XXXIX Rules 1 & 2 CPC for restraining infringement of Trademarks) & I.A. No. 3768/2020 (under Order XXXIX Rules 1 & 2 CPC for anti-suit injunction)**

8.      This is a Suit filed by the Plaintiffs seeking permanent injunction

restraining the Defendants, their directors, proprietors, partners, subsidiaries, affiliates, franchisees, officers, employees, agents and all others in capacity of principal or agent acting for and on their behalf, or anyone claiming through, by or under them, from in any manner using directly or indirectly the Domain name www.hindustan.com or any other mark identical/deceptively similar to the Plaintiffs' Trademarks 'Hindustan' and 'Hindustan Times' amounting to Trademark infringement of the Plaintiffs' Trademarks and Passing Off of the Plaintiffs' goods and services as those of the Defendants.

9.      Permanent injunction is also sought restraining the Defendants or their agents from proceeding with the Suit titled *Brainlink International, Inc. v. HT Media Ltd. & Anr. (Civil Action No.1  20-cv-01279)* before the United States District Court for the Eastern District of New York or from instituting or filing any other suit/applications/proceedings in any Court of Law in relation to the impugned Domain name or any issue which forms the subject matter of the present Suit.

10.     It is stated in the Plaint that Plaintiff No.1, HT Media Ltd. is engaged in the business of print media, radio, internet, etc. and is one of the foremost media houses in India with its leading English publication 'Hindustan Times'.  Plaintiff No.2 is a Subsidiary of Plaintiff No.1 and is also engaged in the business of print media with its Hindi leading publication 'Hindustan'. Plaintiff Nos.1 and 2 belong to  'Hindustan Times' Group.

11.     Plaintiffs further state that the flagship publication of Plaintiff No.1 'Hindustan Times' was founded in the year 1924 and Plaintiff No.2's 'Hindustan' also traces its origin to 1930s.  Both newspapers have, over a period of almost a Century, established their presence as newspapers with

editorial excellence, innovation and integrity.

12.     Plaintiffs aver that their leading Hindi  newspaper 'Hindustan' is the third-largest daily in the Country, with  total readership of around over 50 million, spanning across various States of the Country and their English newspaper 'Hindustan Times' is one of the leading English newspapers with a total readership of about 8.02 million.  'Hindustan Times' is the leading English newspaper in Delhi and the second leading English newspaper in Mumbai.  Apart from print circulation, there are also online Editions of both newspapers  as  available  on  www.livehindustan.com  and www.hindustantimes.com.  Websites  contain  news  articles  and  other infotainment content, latest and breaking News and columns on varied issues, reaching more than 46 million unique users and 42 million users, respectively, in February, 2020.

13.     Plaintiffs  state  that  they  are  the  Registered  Proprietors  of  the Trademarks 'Hindustan' and 'Hindustan Times', including their formative Marks across various classes, as detailed herein under:

| S.No. | Trade Mark | Application No. | Class |
|-------|------------|-----------------|-------|
| 1. | Hindustan Times | 1350439 | 16 |
| 2. | Hindustan | 1508548 | 16 |
| 3. | Hindustan | 2436161 | 38 |
| 4. | www.hindustan.in | 1330851 | 16 |
| 5. | www.hindustantimes.in | 1330852 | 16 |
| 6. | Hindustan (Device) | 2002635 | 16 |

14.     Plaintiffs state that the Trademarks have been continuously and uninterruptedly used by the Plaintiffs and its Group/Subsidiaries, since 1920s and 1930s, respectively and form an essential and dominant part of the Corporate name of the 'Hindustan Times' Group.  On account of the high quality, accurate and unbiased news, opinion and information, the Marks have acquired tremendous goodwill and enormous reputation, which is reflected from the list of Awards and accolades, and the huge revenue turnover of the Companies, as mentioned in paras 13 and 14 of the Plaint, respectively.

15.     It is further stated that the Marks 'Hindustan' and 'Hindustan Times' foster an instant association in the minds of consumers with excellent and high standards of reporting, and Plaintiffs enjoy both Statutory rights under the Trade Marks Act, 1999, (hereinafter referred to as the 'Act') as also common law rights, arising from goodwill and reputation and are thus, entitled to protection against misappropriation.

16.     Learned counsel for the Plaintiffs submits that Defendant No.1, Brainlink International, Inc. is a New York based Corporation and claims to be engaged in business of providing IT related support services to its customers. As per the Website of Defendant No.1 (www.brainlink.com), Defendant No. 2 is the co-founder of Defendant No.1 and  key person in the decision-making activities of Defendant No.1, including infringing activities that form subject matter of the present Suit.

17.     Learned counsel submits that upon information received, it is believed that Defendant No.1 is the registrant/owner of the Domain name www.hindustan.com.   WHOIS details regarding the Domain name are

masked and thus, Plaintiffs have made their assertions on the basis of information received from Defendant No.1 in its correspondence with the Plaintiffs and the Complaint filed by Defendant No.1 against the Plaintiffs, before the United States District Court.

18.    Learned counsel contends that Defendants are infringing and cybersquatting, in violation of the Plaintiffs' Trademark rights in their Marks 'Hindustan' and 'Hindustan Times'.  Plaintiffs had issued a cease and desist Notice dated 24.12.2019 to the Defendants to acquire the Domain name, but the Defendants quoted an exorbitant amount of US $ 3 million in the reply dated 14.02.2020 to sell the Domain name.  When the Plaintiffs responded on 02.03.2020 with a counter offer, Defendants,  surreptitiously filed a Declaratory Suit for non-infringement against the Plaintiffs in the United States District Court for the Eastern District of New York, around 09.03.2020.

19.    Learned counsel submits that Plaintiffs became aware of the Suit in the last week of March, 2020, though they have not been formally served with the Suit papers. It is argued by the learned counsel that the Defendants, admittedly, have no use for the Domain name other than to profit from squatting on the same.  Defendants acquired the impugned Domain name in 1996 in bad faith to ride upon the goodwill and reputation of the Plaintiffs' publications.  Screenshot of the impugned Domain in the year 1999 from the Internet Archive, evidences that the Website was purportedly launched to provide 'daily news content relating to Indian – American interests, stock-market reports from India and America and interactive polls daily on Indian – American issues'. Thus, the adoption of the Domain name, which is identical to the Plaintiffs' Trademarks, to provide identical services as that

of the Plaintiffs, evinces the *mala fides* of the Defendants to profit from the goodwill and reputation of the Plaintiffs' publications.

20.     Learned counsel further submits that the business of the Defendants was not successful and in the year 2000, they shifted use of the Domain name to sell online advertisements. Admittedly, even the same was not successful and as per their own assertions, it was not used to conduct any business since 2000. At present, the Domain name cannot be reached, thus, evincing that Defendants have no legitimate use of the Domain name.

21.     Taking the argument further, counsel for the Plaintiffs submits that bad faith of the Defendants is evident from the various correspondences exchanged between the parties, wherein Defendant No.2 was willing to sell the Domain name, but at an exorbitant price of US $ 3 million.  Defendants, who are subsequent users of the Mark 'Hindustan' have adopted the Domain name only to ride on the goodwill of the Plaintiffs and make money, which amounts to cybersquatting. Use by the Defendants, without any authorisation/license/consent from the Plaintiffs amounts to Trademark infringement under Section 29 of the Act and passive holding of the Domain name amounts to Passing Off and unfair competition of the Plaintiffs' Trademarks.

22.     Internet users who wish to read the online version of the Plaintiffs' Hindi language paper 'Hindustan' or to visit the Plaintiffs' Websites, but are not familiar with the exact web address of the Plaintiffs' Websites, may enter into the address toolbar of their Internet browser, the URL www.hindustan.com and will automatically be taken to the Defendants' Website and could be confused into thinking that the Plaintiffs have taken down their Websites. This would result in erosion of the reputation and

weakening of the value and strength of the Plaintiffs' Trademarks, amounting to dilution and tarnishment.

23.     Learned counsel for the Plaintiffs submits that this is a fit case for the Court to restrain the proceedings of a Foreign Court, by an anti-suit injunction. Defendants are amenable to the personal jurisdiction of this Court as the Website of the Defendants can be accessed by viewers within Delhi. Further, the Defendants are willing to sell the Domain name to the Plaintiffs, who are within the jurisdiction of this Court.

24.     Learned counsel for the Plaintiffs contends that Section 134(2) of the Act provides that for infringement of Trademark, Plaintiff can institute a Suit within the jurisdiction of the Court, where it carries on business. This Court would have jurisdiction to decide the present Suit for infringement of the Trademarks as they are registered in Delhi.  Registered Office of Plaintiff No.1 is in Delhi and Plaintiff No.2 maintains its Books of Accounts at Delhi office.

25.     Learned counsel contends that if the injunction is declined, irreparable harm and loss would be caused to the Plaintiffs. Plaintiffs will be constrained to defend themselves before the EDNY Court, which has no jurisdiction over the Plaintiffs or the subject matter of the dispute.  Plaintiffs neither have an office in New York nor any other city in USA, except for one employee who is based in Potomac.  Cause of action *i.e.* violation of Trademark rights of the Plaintiffs has arisen within India and the trial to prove the Trademark rights would thus, have to be held in India. The Suit before New York Court is vexatious and oppressive as the Plaintiffs have not asserted Trademark rights in USA.

26.     I have heard learned counsel for the Plaintiffs and perused the

documents on record.

27.     Domain name is the address given to a website by which an intended user can visit the Website of the identified person. With the present day advancement in technology and Internet communications, most Companies and organisations promote themselves on the Internet and thus, a Domain name is akin to a Trademark. The Supreme Court in the case of ***Satyam Infoway Ltd. v. Siffynet Solutions (P) Ltd., (2004) 6 SCC 145***, held that a Domain name may have all the characteristics of the Trademark and an action for Passing Off can lie for the same.  Court observed that use of the same or similar Domain name may lead to a diversion of users which could result from users mistakenly accessing one Domain name instead of another. Relevant portion of the judgment is as under:

> "*16. The use of the same or similar domain name may lead to a diversion of users which could result from such users mistakenly accessing one domain name instead of another. This may occur in e-commerce with its rapid progress and instant (and theoretically limitless) accessibility to users and potential customers and particularly so in areas of specific overlap. Ordinary consumers/users seeking to locate the functions available under one domain name may be confused if they accidentally arrived at a different but similar website which offers no such services. Such users could well conclude that the first domain-name owner had misrepresented its goods or services through its promotional activities and the first domain-owner would thereby lose its custom. It is apparent, therefore, that a domain name may have all the characteristics of a trade mark and could found an action for passing off.*"

28.     In the case of ***Mr. Arun Jaitley v. Network Solutions Private Limited & Ors., 2011 SCC Online Del 2660,*** Court emphasised the importance of protection of the Domain name, particularly, in the present day context so

that identified names of the Companies which have a distinct place in the market do not get into the hands of those who are either not connected or concerned with the names or use the name only for cybersquatting. The Court held as under:

> 23.   At this stage, let me now discuss the law relating to protection of domain names which is worth noting. The domain name is usually an address given to the website so that the person intending to visit the same may visit the website of the identified person.
>
> a) This function of giving names to the addresses of the website has undergone magnificient change whereby the companies, firms, eminent individuals have been able to name the web addresses after their own names and/or trade mark. This performs dual functions, firstly, the domain name does not merely remain as an address but rather performs the function of a trade mark as the prospective customers or other known persons visit the webpage and are able to immediately connect with the source and identify the same with the particular company or the individual.
>
> b) Secondly, so far as individual persons or eminent personalities/popular companies are concerned, their identity is established in the virtual world of internet. In other words, the popularity or the fame of any individual or the company will be no different on the computer (or internet) than the reality.
>
> c) Therefore, it becomes incumbent to protect the domain names so that the identified names of companies and individuals which are distinct at the market place may not go at the hands of individuals who are nowhere concerned with those names and have obtained them just because they are better conversant with the computer techniques and usage of the internet. To simplify, in order to prevent the cyber squatting or trafficking or trading in domain names or the marks, the trade mark law has been stretched to the extent that it may cover the field of internet and domain names may be protected just like the trade marks.

29.    The first and foremost issue that arises in this case is the jurisdiction of this Court. This aspect is required to be examined in the context of grant of relief of injunction against the infringement of the Trademarks of the Plaintiffs as well as for grant of anti-suit injunction, as the Defendants are stated to have foreign addresses. The exact details of the actual Registrant are not yet traceable. It is, however, clear that the owner of the Defendant no.1/ Company is one Mr. Raj Goel, of Indian origin.

30.    Insofar as the relief with respect to Infringement/Passing Off is concerned, counsel for the Plaintiffs has rightly relied upon Section 134(2) of the Act. The said provision clearly provides that in cases of infringement of Trademark, the Plaintiff can institute a Suit within the jurisdiction of the Court where it 'carries on business'. From the pleadings and documents placed on record, it is clear that the Plaintiffs have a Registered Office in Delhi and they carry on business in Delhi.

31.    Insofar as grant of anti-suit injunction is concerned, the Supreme Court in the case of ***Modi Entertainment Network & Another v. W.S.G. Cricket Pte. Ltd., (2003) 4 SCC 341***, has clearly laid down the principles for grant of the same, which are as under:

> *"24. From the above discussion, the following principles emerge:*
>
> *(1) In exercising discretion to grant an anti-suit injunction the court must be satisfied of the following aspects:*
>
> *(a) the defendant, against whom injunction is sought, is amenable to the personal jurisdiction of the court;*
>
> *(b) if the injunction is declined, the ends of justice will be defeated and injustice will be perpetuated; and*

*(c) the principle of comity — respect for the court in which the commencement or continuance of action/proceeding is sought to be restrained — must be borne in mind.*

*(2) In a case where more forums than one are available, the court in exercise of its discretion to grant anti-suit injunction will examine as to which is the appropriate forum (forum conveniens) having regard to the convenience of the parties and may grant anti-suit injunction in regard to proceedings which are oppressive or vexatious or in a forum non-conveniens.*

*…………*

*(7) The burden of establishing that the forum of choice is a forum non-conveniens or the proceedings therein are oppressive or vexatious would be on the party so contending to aver and prove the same.*

32.     The Court would have to thus examine whether the Defendants are amenable to personal jurisdiction of this Court, whether injustice would be caused to the Plaintiffs if the injunction was refused and which would be the Forum Conveniens, in case there were more than one Forum available to the Plaintiffs.

33.     In the case of ***India TV, Independent News Service Pvt. Ltd. v. India Broadcast Live LLC & Ors., 2007 SCC OnLine Del 960***, the Court was examining a similar issue regarding Passing Off a Domain name by a foreign Defendant and stayed the proceedings instituted by the Defendants before the Arizona District Court on the ground that the damage to the Plaintiff's goodwill and reputation would be in India, as the Plaintiff's News Channel was broadcasted for Indian audiences.  Court held that:

*"53. The plaintiff's channel being primarily an Indian news channel intended for Indian audiences, any damage alleged to have been caused or alleged to be likely to arise to the goodwill, reputation, etc. of the plaintiff would be in India.*

*Further, the alleged damage that may have arisen or may be likely to arise to the plaintiff would be as a consequence of the fact that the impugned Website is accessible in India and the services provided can be availed of in India.*

*54. <u>The result of the aforesaid is that the defendant is carrying on activities within the jurisdiction of this Court; has a sufficient contacts with the jurisdiction of the Court and the claim of the plaintiff has arisen as a consequence of the activities of defendant No. 1 within the jurisdiction of this Court. This Court can thus exercise personal jurisdiction over the defendants</u>.*

*xxx                    xxx                    xxx*

*Conclusion*

*144. The result is that IA 2611/2007 stands allowed and defendant No. 1 is restrained from proceeding with the suit filed in the District Courts at Arizona.*"

34.     The Court further observed that usually there are three tests which are repeatedly employed by the Courts to make the determination and which are:

*(a)     defendant purposefully availed himself of acting in the Forum State or causing a consequence in the Forum State;*

*(b)     <u>cause of action must arise from the defendants activities there;</u>*

*(c)     <u>the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make exercise of jurisdiction over the defendant reasonable</u>.*

35.     In paragraph 50, Court held as under:

> *"50.   Insofar as the position in this country is concerned, there is no long arm' statute as such which deals with jurisdiction as regards non-resident defendants.  Thus, it would have to be seen whether the defendant's activities have a sufficient connection with the forum state (India); <u>whether the cause of action arises out of the defendant's activities within the forum and whether the exercise of jurisdiction would be reasonable</u>.*

36.     In the case of ***ICICI Bank Ltd. v. Chuandong XU & Anr., in CS(OS) No.2606/2008, decided on 18.12.2008***, this Court exercised jurisdiction over a foreign Defendant and granted an *ex parte* injunction from using a Domain name.

37.     Admittedly, the Defendants have not used the Domain name www.hindustan.com since 2000. This is evident from a reading of certain portions of the Complaint filed by the Defendants in USA, which have been brought to the attention of the Court, by learned counsel for the Plaintiffs.  It thus, appears that the Defendants' sole motive for registering the impugned Domain name was only to profiteer from the same and this is thus a classic case of cybersquatting.  Mere passive holding of the Domain name, without any use, evinces bad faith of the Defendants under Clause 4 of the Uniform Dispute Resolution Policy (UDRP), as held in the case of ***Mr. Arun Jaitley** (supra)*, relevant para of which reads as under:

> *"40.  In the present case, as I have already come to the conclusion that the name ARUN JAITLEY is a well known name, the use of the same without any reason by the defendants as a Domain name and keeping in possession the said Domain without sufficient cause is violative of the ICANN policy and can be safely held to be a bad faith registration."*

38.     Bad faith on the part of the Defendants is also *prima facie* borne out

from the fact that their offer price for the impugned Domain name increased to US $ 3 million when the Plaintiffs approached the Defendants to buy the same, as opposed to quote of US $ 1 million, when approached by one of the investigators of the Plaintiffs. The conduct of the Defendants in quoting an exorbitant amount to sell the impugned Domain name to a Trademark owner or to a third party, is evidence of bad faith, as also held by this Court in *Acqua Minerals Ltd. v. Pramod Borse and another*, *2001 SCC OnLine Del 444.*

39.     In the present case, the Plaintiffs are in the business of publication, both print and online. The word 'Hindustan' appears in the Domain name of the Defendants. Though the website may have been passive for a long time, but as the Plaintiffs rightly contend, there is every possibility that the users who may not be familiar with the exact web address of the Plaintiffs' Websites or even otherwise, accidentally, may enter into the address toolbar of their Internet Browser, the URL www.hindustan.com and will automatically be taken to the Website of the Defendants and would be confused into thinking that the plaintiffs have taken down their Websites. Besides, repeated failure to access the Websites of the Plaintiffs or accessing a Website which is not reachable or unrelated, would deter consumers from accessing the site of the Plaintiffs. In today's world of competition, internet users would automatically be diverted by search engines to websites with identical or similar names, which can be accessed far easily. This would lead to erosion of the reputation and goodwill of the Plaintiffs and weakening of the value and strength of their Trademarks, amounting to dilution and certainly loss of business. Since the publications of the Plaintiffs are for Indian audiences, the damage, if any, would be to the goodwill and

reputation of the Plaintiffs, in India. The damage that would arise would be a consequence of the fact that the impugned website is accessible in India and in any case intended to publish information primarily aimed at Indian audiences. Plaintiffs are also *prima facie* right in contending that the Defendants may sell the Domain name to the competitors of the Plaintiffs and since the Trademarks 'Hindustan' and 'Hindustan Times' have goodwill in India, any use of the Domain name will always be targeted for viewers in India. On the basis of the tests laid down in ***Banyan Tree Holding (P) Limited v. A. Murali Krishna Reddy & Anr., 2009 SCCOnline Del 3780***, thereafter followed in ***Millennium & Copthorne International Limited v. Aryans Plaza Services Private Limited & Ors, in CS(Comm) 774/2016, decided on 05.03.2018***, sufficient points of contact exist for vesting jurisdiction in this Court.

40.     A close reading of the judgment in ***India TV*** (*supra*), which in turn relied upon the three tests laid down in ***Cybersell Inc. v. Cybersell Inc., 130 F.3d 414 (1997)***, and ***Panavision International LP v. Dennis Toppen, Network Solutions Inc.,(D.C.Case No. CV-96-03284-DDP; Appeal No. 97-55467)*** would show that if the Plaintiffs are able to demonstrate close connection of the Defendants' activities in India and if cause of action has arisen here, coupled with it being reasonable to exercise jurisdiction, Court would exercise jurisdiction over the Defendants.  Under Section 20(c) CPC, a suit can be filed within the local limits of the Courts where the cause of action arises, wholly or in part.

41.     At the time when the Website of the Defendants was launched, it was meant to provide information relating to daily News content, stock market and other reports on the Indian-American issues. Thus, at the time of

adoption of the Domain name, Defendants were targeting the viewers in India, including Delhi. Defendants have not actively used the Website since 2000 and from the negotiations and exchange of correspondence between the parties, it appears that the only purpose of adopting the Domain name was to profiteer out of the same and offer it to the Plaintiffs at an exorbitant price. Defendants were willing to sell the Domain name to the Plaintiffs, who carry on business in Delhi, negotiations on behalf of the Plaintiffs, including receiving of offer and giving a counter offer through emails also has its origin in Delhi. Significantly the email dated 14.02.2020 demanding US $ 3 million from the Plaintiffs was also received in Delhi. The notice and the ensuing correspondence precedes the Suit in New York and is hence merely a counter-blast to the Plaintiffs' legitimate exercise of their rights and availment of remedies. Thus, a substantial and integral part of the cause of action under Section 20 (c) CPC for the Plaintiffs to file the present Suit, has arisen within the jurisdiction of this Court.

42.     Traversing the law on the subject, as above, and looking to the facts of the case as set out by the Plaintiffs, this Court is of *prima facie* opinion that Court has personal jurisdiction over the Defendants.

43.     Insofar as infringement of the Trademarks is concerned, from the correspondence on record, it is clear that the Domain name registration of the Defendants is in Bad Faith, as defined under *Clause 4 of the Uniform Dispute Resolution Policy,* as the Defendants are neither using the Domain name for any legitimate activity and also appear to have registered the same with the intention of earning monetary benefit. Owing to the Registered Trademarks owned by the Plaintiffs and the reputation and goodwill enjoyed by the said Marks, which is not restricted merely to India but is global, as

also the fact that the Domain name is registered in 'Bad Faith', the Plaintiffs are entitled to an interim injunction from further use of the Domain name www.hindustan.com.

44.    This Court is also of the *prima facie* opinion that the Suit before the Eastern District of New York, is vexatious and oppressive, as the Plaintiffs have not asserted Trademark rights in USA. The Trademarks of the Plaintiffs are registered in India and the Plaintiffs' goodwill spills over Internationally. But the Plaintiffs do not carry on any business in USA. Defendants had offered to sell the Domain name to the Plaintiffs at a price of US $ 3 Million but once unsuccessful, in the attempt to profiteer, they filed a suit for Declaration in order to further their intention to frustrate the Plaintiffs from availing of their remedies. The filing of the suit is also an attempt to legitimise the alleged infringement action of the registered Trademarks of the Plaintiffs. Plaintiffs have made out a *prima facie* case for grant of an anti-suit injunction before this Court.

45.    Plaintiffs have been able to satisfy that unless *ex parte* injunction is granted at this stage, they would be put to substantial hardship and would be unnecessarily required to enter defence in those proceedings. Balance of convenience also lies in favour of the Plaintiffs.

46.    Under these circumstances, the Defendants and/or anyone acting for or on their behalf are restrained from, in any manner, using directly or indirectly, the Domain name www.hindustan.com or any other mark identical/deceptively similar to the Plaintiffs' Trademarks 'Hindustan' and 'Hindustan Times', amounting to infringement of the Plaintiffs' registered Trademarks or Passing Off, till the next date of hearing.

47.    Defendants are also restrained from creating any third party rights in the impugned Domain name www.hindustan.com. The Registering authority of the Domain name www.hindustan.com - M/s. Enom Llc (legal@enom.com) is directed to block the said Domain name, and maintain status quo, till the next date of hearing.

48.    Defendants, their agents and representatives are restrained from proceeding further with the suit titled *Brainlink International, Inc. v. HT Media Ltd. and Another (Civil Action No.1  20-cv-01279)* before the United States District Court for the Eastern District of New York or to institute/file any suit, applications, proceedings in any Court of Law or Authority, in relation to the impugned Domain name or in relation to any issue which forms the subject matter of the present Suit, till the next date of hearing.

49.    Compliance of Order XXXIX Rule 3 CPC be done by email within ten days. Copy of this order be served upon all the Defendants and the Registering authority at legal@enom.com by email. Service of Summons and Notices is permitted by email in addition to courier.

50.    This order be uploaded on the Website of Delhi High Court and a copy be sent to the counsel for the Plaintiffs by email.


**JYOTI SINGH, J**

**APRIL 28, 2020**
srb/rd

EXHIBIT B

$~1

* **IN THE HIGH COURT OF DELHI AT NEW DELHI**

+ **CS(COMM) 119/2020, IAs 4132/2020, 4089/2020, 4090/2020, 4157/2020, 3767/2020 & 3768/2020**

HT MEDIA LIMITED & ANR          ..... Plaintiffs

|  | Through: | Mr. Saikrishna Rajgopal, Adv. with Mr. Sidharth Chopra, Ms. Asavari Jain, Ms. Sneha Jain & Mr. Vivek Ayyagiri, Advs. |

versus

BRAINLINK INTERNA- TIONAL INC. & ANR

..... Defendants

|  | Through: | Mr. Hiren Kamod, Adv. with Mr. Manish Dhir, Mr. Vaihav Keni & Ms. Neha Iyer, Advs. |

**CORAM:**
**HON'BLE MR. JUSTICE V. KAMESWAR RAO**
**O R D E R**
%           **02.06.2020**

This matter is being heard through video-conferencing

**IAs 4089/2020 & 4132/2020**

There are two applications, which are listed today, the same are  IA 4089/2020 filed by the defendants under Order 39 Rule 4 read with Section 151 CPC for vacating / varying / modification of ex-parte order dated April 28, 2020 and IA 4132/2020 filed by the plaintiffs under Order 39 Rule 2A

read with Section 151 CPC for initiating contempt proceedings against the defendants.

It is the submission of Mr. Saikrishna, till such time the defendants purge themselves of contempt, the application under Order 39 Rule 4 should not be heard.  Noting the said submission , I deem it appropriate to issue notice on IA 4132/2020.  Mr. Hiren Kamod, Adv. accepts notice on behalf of defendants, seeks and is allowed three weeks to file reply to the application.  Rejoinder, if any be filed within one week thereafter.

List on 9th July, 2020.

Interim order to continue.

**V. KAMESWAR RAO, J**

**JUNE 02, 2020**/ak

EXHIBIT C

$~3
* **IN THE HIGH COURT OF DELHI AT NEW DELHI**

+ **CS (COMM) 119/2020, IAs 4090/2020, 4132/2020, 5343/2020 & 5344/2020**

HT MEDIA LIMITED & ANR.

.....Plaintiffs

Through:   Mr. Saikrishna Rajagopal, Adv. with Mr. Sidharth Chopra, Ms. Asavari Jain, Ms. Sneha Jain and Mr. Vivek Ayyagiri, Advs.

versus

BRAINLINK INTERNATIONAL, INC. & ANR.

..... Defendants

Through:   Mr. Manish Dhir, Adv.

**CORAM:**
**HON'BLE MR. JUSTICE V. KAMESWAR RAO**
**O R D E R**
% **09.07.2020**

This matter is being heard through video-conferencing.

**IA 4090/2020 (by defendants seeking exemption from filing court fee and notarized affidavits)**

For the reasons stated in the application, the same is allowed and plaintiffs are exempted from filing notarized affidavits.

Subject to the applicant / plaintiffs filing the necessary Court fee within 72 hrs from the date of resumption of regular functioning of the Court, as mandated in terms of Office Order dated April 04, 2020 issued

by this Court, exemption from filing the requisite court fees is granted. Application is disposed of.

### IA  5344/2020 (by plaintiffs seeking exemption from filing duly affirmed affidavits)

For the reasons stated in the application, the same is allowed and plaintiffs are exempted from filing duly affirmed affidavits.  Application is disposed of.

### IA  4132/2020

Reply to the application is stated to have been filed by defendants. The same is not on record, even though rejoinder filed thereto is on record.  Registry to place the same on record.

Mr. Manish Dhir, learned counsel appearing for the defendants states that he wishes to move an application before the Court in U.S.A. for withdrawing certificate of default.   Taking on record the said statement, I deem it appropriate to adjourn the proceedings to 17th August, 2020.

During the course of hearing, Mr. Manish Dhir has stated that the interim order must not be read to mean that the defendant is restrained from approaching the statutory authority for filing objections to the trademark.  Mr. Saikrishna, learned counsel for the plaintiffs concedes to the fact that the defendants would be within their right to file opposition to the trademark before the Trademark Registry.

### IA 5343/2020

1.     This is an application filed by the plaintiffs with the following reliefs:-

*"In light of the aforementioned facts and circumstances, it is most humbly prayed before this Hon'ble Court that it may be pleased grant the following reliefs:*

*a.     An order directing the Defendants to take all necessary steps including providing the authorization codes and all the other relevant details of the domain name www.hindustan.com in order to transfer the domain name to the Registrar General of the Delhi High Court;*

*b. An order directing the Registrar of the domain name [www.hindustan.com](www.hindustan.com) i.e. Enom LLC to take all necessary steps in assisting the transfer of the domain name www.hindustan.com to the Registrar General of the Delhi High Court;*

*c. An order directing the Registrar General of the Delhi High Court to take all necessary steps for the purposes of taking the possession of the domain name www.hindustan.com till the disposal of the present suit;*

*AND*

*Any such other and/or further order(s) as this Hon'ble Court may deem fit and proper in the interest of justice."*

2.     Notice, Mr. Dhir accepts notice on this application.  He states that the present application filed by the plaintiffs for the relief sought for is not called for as the interest of the plaintiffs is protected by the order dated April 28, 2020, inasmuch as the Court has restrained the defendants from transferring the domain name to a third party.  He also states, even the Registrar of domain name cannot transfer the domain name to a third party without the permission / consent of the defendants.  He assures the

Court that till the next date of hearing, the defendants shall not give consent to the Registrar of domain name for transferring the domain name to a third party. His statement is taken on record.

3.     Reply, if any to the application be filed within two weeks. Rejoinder thereto, if any be filed within two weeks thereafter.

4.     List on date fixed i.e 17th August, 2020.


**V. KAMESWAR RAO, J**

**JULY 09, 2020**/ak